**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | **CRIMINAL ACTION NO.** |
| **RASHAWN RAMAL WILSON,** | **3:24-cr-00028-TES-CHW** |
| *Defendant.* | |

## ORDER DENYING MOTION TO SUPPRESS

Via the motion to suppress before the Court, Defendant Rashawn Ramal Wilson seeks to suppress all evidence resulting from what he argues is an insufficient inventory search policy from the Oconee County Sheriff's Office. [Doc. 28].[1]

## FACTUAL BACKGROUND

The Court held an evidentiary hearing on Defendant Wilson's motion on July 9, 2026, and it finds that the government established the following facts by a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972))[1]; [Doc. 30]. The government called one witness, Sergeant Lex Ogan with the Oconee County Sheriff's Office. In addition to receiving Officer Ogan's testimony, the Court also admitted four exhibits and reviewed

---

[1] The decisions handed down prior to the close of business on September 30, 1981, by the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth') "shall be binding as precedent in the Eleventh Circuit" for the court of appeals, the district courts, and the bankruptcy courts. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

the bodycam footage from the traffic stop.

Officer Ogan testified that around 10:30 P.M., on February 24, 2023, he initiated a traffic stop on a 1995 Chevrolet pick-up truck that did not have valid insurance. *See* O.C.G.A. § 40-6-10. When Officer Ogan began to interact with the pick-up's driver, the driver handed him a driver's license bearing the name "Quintavious Mitchell." After the driver tried to verify up-to-date insurance, the photograph of the insurance card sent to him via text message indicated that insurance expired on February 17, 2023. While the driver made another attempt to verify insurance, Officer Ogan returned to his patrol vehicle, but he soon discovered that Quintavious Mitchell had an active arrest warrant from another Georgia county. Officer Ogan also confirmed that insurance on the pick-up had lapsed by calling the insurance company himself.

Officer Ogan testified that he arrested the driver because of the outstanding warrant on Quintavious Mitchell, the name listed on the driver's license presented by the driver. Since the pick-up didn't have valid insurance, though, Officer Ogan, relying on O.C.G.A. §§ 40-6-202 & 206, testified that it needed to be impounded. Officer Ogan further testified that once a wrecker is required to tow a vehicle, there are standard operating procedures that must be followed. For example, "the police custody of the vehicle must be lawful," and searches of the to-be-impounded vehicle must be conducted to protect its contents. [Doc. 29-2, p. 6]. As Officer Ogan put it, the purpose of the inventory search is because they don't want anything to go missing while a vehicle

2

is in the custody of the sheriff's office. Officer Ogan's testimony was clear in that he was not looking for evidence of a crime when scanning the pick-up's contents.

In seeing which items inside the pick-up needed to be inventoried, Officer Ogan testified that he started at the driver's door panel and then made his way to the seat area. Looking at bodycam footage, the front seating area of the pick-up can lawfully seat three people. The seatback for the middle seat, however, can fold down to also function as an armrest. When Officer Ogan lifted the seatback that the driver had folded down to use as an armrest, there was, in plain view, a loaded 9mm pistol. Turns out, however, the driver wasn't Quintavious Mitchell. It was Defendant Wilson.

Subsequently, the grand jury charged Defendant Wilson with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). [Doc. 1]. Arguing that the standard operating procedure from the Oconee County Sheriff's Office on inventory searches is invalided under "the constraints of the Fourth Amendment," Defendant Wilson seeks to suppress Officer Ogan's discovery of the pistol. [Doc. 28, pp. 1, 8]. At the hearing, Defendant Wilson clarified that the driving force behind his suppression efforts is his argument that because the policy is "bad," the entire search of the pick-up must be thrown out.

### LEGAL STANDARD

The movant bears the initial burden of persuasion, through specific factual allegations and supporting evidence, that the evidence should be suppressed. *United*

3

*States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977).[2] Once the movant establishes a basis for the motion, the burden then shifts to the government to prove by a preponderance of the evidence that the search or seizure of evidence was legally and factually justified. *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983) (citation omitted). "Upon a motion to suppress evidence garnered through a warrantless search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution." *Id.* The government has to "demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement" to render it reasonable within the Fourth Amendment's context. *Id.*

## DISCUSSION

"[T]he Fourth Amendment does not require that every search be made pursuant to a warrant." *S. Dakota v. Opperman*, 428 U.S. 364, 372 (1976). As Defendant Wilson argues, "[a]n exception to the Fourth Amendment's warrant requirement allows officers to inventory property inside of [vehicles]." [Doc. 28, p. 4 (citing *Colorado v. Bertine*, 479 U.S. 367, 371 (1987))]. That said, any "policy or practice governing inventory searches should be designed to produce an inventory." *Florida v. Wells*, 495 U.S. 1, 4 (1990). "The individual police officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime[.]'" *Id.* (quoting *Bertine*, 479 U.S. at 376).

---

[2] *See* n.1, *supra.*

4

"If a search is to be upheld under the inventory search doctrine, . . . the police must first have the authority to impound the vehicle and must then follow the procedures outlined in the policy." *United States v. Williams*, 936 F.2d 1243, 1248 (11th Cir. 1991). Both of those things occurred here. "[T]hree distinct interests . . . justify the inventory search of a vehicle upon impoundment: (1) the protection of the owner's property while it remains in police custody; (2) the protection [of] the police against claims or disputes over lost or stolen property; and (3) the protection of the police from potential danger." *United States v. Handy*, 592 F. App'x 893, 906 (11th Cir. 2015). Lastly, "failure to introduce a written impound policy does not demand suppression," and the government need "only demonstrate that an 'established routine' or 'practice' exist[ed] authorizing impoundment. *United States v. Foskey*, 455 F. App'x 884, 890 (11th Cir. 2012) (quoting *Wells*, 495 U.S. at 4).

Officer Ogan testified that since the pick-up did not have valid insurance and was partially blocking a turn lane, he made the decision that it needed to be towed. [Doc. 29-3, p. 8 (listing, "[d]riv[ing] without proper insurance" as a situation where officers may consider to immediately impound a vehicle)]. Further, as Officer Ogan believed at the time, the driver had an active arrest warrant, so impound was the most viable option for the pick-up. "Nothing . . . prohibits the exercise of police discretion [regarding a decision to impound a vehicle] so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of

evidence of criminal activity." *United States v. Moss*, 748 F. App'x 257, 259 (11th Cir.

2018) (citing *Wells*, 495 U.S. at 3–4).

First and foremost, in this case, Officer Ogan clearly had such a basis—arresting

the driver of the pick-up on Quintavious Mitchell's active warrant because Defendant

Wilson presented a driver's license under the false pretense that he *was* Quintavious

Mitchell. Under the relevant policy for the Oconee County Sheriff's Office, when "[a]

driver is arrested," the vehicle will "[p]referably" be moved "by either the owner's

requested wrecker *or* by [the arresting deputy] calling" one of the wrecker companies

that contracts with the Oconee County Sheriff's Office.  [Doc. 29-4, pp. 1 (emphasis

added), 7–8]; *see also* O.C.G.A. § 40-6-206. Given than it was 10:30 at night, Officer Ogan

testified that it was more prudent for him to call one of the sheriff's office's "listed

wrecker" companies as opposed to letting Defendant Wilson select a towing company

of his choosing. *Moss*, 748 F. App'x at 260 ("Under these conditions, it was eminently

reasonable for the police to believe that public safety and prudence demanded that they

not wait for somebody [of Moss's choosing] to come retrieve the car."); [Doc. 29-4, p. 1].

Again, as Officer Ogan testified, it's preferred but not required that an arresting officer

allow a driver to select his or her own towing company. To the extent Defendant Wilson

argues that officers making lawful arrests are *constitutionally required* to inform arrestees

that they have the option to select a towing company of their choice to ostensibly block

or delay an inventory search is unavailing. "[R]easonableness of any particular

6

governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." *Bertine*, 479 U.S. at 374.

Second, having easily found that the government established that the pick-up was lawfully impounded, the Court turns to the inventory procedures used by the Oconee County Sheriff's Office. *Williams*, 936 F.2d at 1248. Under the relevant procedures, once "a deputy assumes responsibility for towing a vehicle," "[a] vehicle inventory will be completed . . . before allowing the [w]recker driver to pull the vehicle." [Doc. 29-4, p. 8]. Officer Ogan completed such an inventory listing in this case. *See, e.g.*, [Doc. 29-1].

Third, and finally, as it relates to the crime charged in this case, the most basic of searches revealed the pistol under the folded down seatback of the middle seat. Upon consideration of Officer Ogan's credible testimony and upon review of the bodycam footage and the four exhibits submitted by the government, when it comes to the pistol, the Court finds that the policy from the Oconee County Sheriff's Office is "designed to produce an inventory." *Wells*, 495 U.S. at 4. Although not very detailed, what the Oconee County Sheriff's Office has in place is aimed at protecting property within an impounded vehicle; ensuring against claims of lost, stolen, or vandalized property; and guarding officers from danger. *Wells*, 495 U.S. at 4; *see also United States v. Johnson*, 777 F.3d 1270, 1277 (11th Cir. 2015) (noting, "'standard criteria' need not be detailed criteria"); *Foskey*, 455 F. App'x at 890. Most importantly, Officer Ogan's mere lifting of

7

the folded down seatback covering the pistol was not "a surrogate for investigation" to discover evidence of a crime. *United States v. Khoury*, 901 F.2d 948, 958 (11th Cir. 1990). Thus, when it comes to the pistol, Officer Ogan found it because he conducted a simple search to inventory the contents of the impounded pick-up, and lifting the seatback "was necessary to accomplish the ends" of the inventory search policy and impound policy used by the Oconee County Sheriff's Office. *Id.* (citing *United States v. Laing*, 708 F.2d 1568, 1570 (11th Cir. 1983) (per curiam)); *see also Wells*, 495 U.S. at 4.

**CONCLUSION**

Accordingly, the Court **DENIES** Defendant Wilson's motion to suppress. [Doc. 28]. The Court notes for the parties that trial for this matter is currently set for October 26, 2026. *See* Notice of Setting Hearing, *United States v. Wilson*, No. 3:24-cr-00028-TES (M.D. Ga. July 9, 2026).

**SO ORDERED**, this 15th day of July, 2026.

*S/ Tilman E. Self, III*
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**

8
